## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARK JACKSON,                        :
                                     :
            Plaintiff,               :
                                     :        Civil Action No. 10-938 (GMS)
       v.                            :
                                     :
THE DOW CHEMICAL COMPANY,            :
ET AL.,                              :
                                     :
            Defendants.              :

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS LIBERTY MUTUAL INSURANCE COMPANY, LORI HAMLIN, NANCY MAYO, RICHARD P. QUINLAN, SEAN B. MCSWEENEY AND MICHAEL MILLER TO DISMISS PLAINTIFF'S COMPLAINT

**Drinker Biddle & Reath LLP**

Todd C. Schiltz (Id. No. 3253)
1100 N. Market Street
Wilmington, Delaware  19801-1254
(302) 467-4221

*Of Counsel*
Jason P. Gosselin (admitted *pro hac vice*)
**Drinker Biddle & Reath LLP**
One Logan Square, Ste. 2000
Philadelphia, PA  19103-6996

Dated:  January 28, 2011

*Attorneys for Defendants Liberty Mutual Insurance Company, Lori Hamlin, Nancy Mayo, Richard P. Quinlan, Sean B. McSweeney and Michael Miller*

I.      Nature and Stage of the Proceedings ................................................................. 1

II.     Summary of the Argument................................................................................... 1

III.    FACTUAL BACKGROUND ............................................................................... 2

        A.      Mr. Jackson's Original State Court Action Against Rohm and Haas................... 3

        B.      Mr. Jackson's First Federal RICO Action (Jackson I)........................................... 3

        C.      Mr. Jackson's Second Federal RICO Action (Jackson II). ................................... 3

        D.      Mr. Jackson's Third Federal RICO Action (Jackson III). ..................................... 4

        E.      The Consolidation of Jackson II and Jackson III .................................................... 5

                i.      The Court Directs Mr. Jackson to File a Consolidated Complaint. ........... 5

                ii.     The Consolidated Complaint. ................................................................. 5

                iii.    Mr. Jackson Files Motion to Enjoin $6 Billion Acquisition of
                        Safeco.................................................................................................... 6

                iv.     The Dismissal of Consolidated Action. ................................................. 7

        F.      Mr. Jackson's Fourth RICO Action (the Delaware Lawsuit). .............................. 9

IV.     ARGUMENT ...................................................................................................... 10

        A.      Legal Standards.................................................................................................... 10

        B.      Plaintiff's Claims are Barred by the Doctrine of *Res Judicata* and/or
                Collateral Estoppel .............................................................................................. 11

                i.      The Eastern District's Dismissal of Plaintiff's Claims is a Final
                        Judgment on the Merits.......................................................................... 12

                ii.     The Same Parties are Involved in the Instant Action as in the
                        Previous Litigation ................................................................................ 14

                iii.    The Causes of Action Asserted Here are the Same Causes of
                        Action as  in the Previous Litigation...................................................... 16

        C.      Mr. Jackson's Claims Against Attorney Defendants Fail as a Matter of
                Law ....................................................................................................................... 18

                i.      The Attorney Defendants' Actions Did Not Harm Mr. Jackson ............. 18

ii.    Counsel for the Liberty Defendants are Entitled to Litigation Immunity ................................................................................................ 19

V.    CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Allen v. McCurry*,
    449 U.S. 90 (1980) .......................................................................................... 11-12

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................18

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) .........................................................................................11

*Benjamin v. Tomasso*,
    no. 98-2659, 1998 U.S. Dist. LEXIS 18647 (E.D. Pa. Nov. 24, 1998) ......................15

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
    402 U.S. 313 (1971) ............................................................................................16

*Brody v. Hankin*,
    145 F. App'x 768 (3d Cir. 2005) .............................................................................11

*Bruszewski v. United States*,
    181 F.2d 419 (3d Cir. 1950) ..................................................................................15

*CoreStates Bank, N.A. v. Huls Am., Inc.*,
    176 F.3d 187 (3d Cir. 1999) ..................................................................................16

*Davis v. United States Steel Supply, Div. of United States Steel Corp.*,
    688 F.2d 166 (3d Cir. 1982) ..................................................................................17

*Fisher Bros. Sales v. United States*,
    46 F.3d 279 (3d Cir. 1995), *cert. denied*, 516 U.S. 806 (1995) ...................................11

*Foster v. N.J. DOT*,
    no. 04-101, 2005 U.S. Dist. LEXIS 36439 (D.N.J. Dec. 27, 2005) ............................15

*Gambocz v. Yelencsics*,
    468 F.2d 837 (3d Cir. 1972) ..........................................................................12, 15, 17

*Holmes v. Sec. Investor Prot. Corp.*,
    503 U.S. 258 (1992) ............................................................................................18

*Household Int'l, Inc. v. Westchester Fire Ins. Co.*,
    286 F. Supp. 2d 369 (D. Del. 2003) ........................................................................12

*Huhta v. State Bd. of Med.*,
    706 A.2d 1275 (Pa. Commw. Ct. 1998) ....................................................................20

*Iseley v. Talaber*,
    no.05-444, 2008 U.S. Dist. LEXIS 25700 (E.D. Pa. Mar. 31, 2008) ........................15

*Jackson II*, No. 05-4988, 2006 WL 680933 (E.D. Pa. Mar. 9, 2006) ................................4

*Jackson v. McCrory*,
    578 Pa. 690 (2004) ......................................................................................................3

*Jackson v. McCrory*,
    833 A.2d 1155 (Pa. Super. 2003) ................................................................................3

*Jackson v. Rohm and Haas Co.*,
    56 Pa. D. & C.4th 449 (Pa. Com. Pl. 2002) ................................................................3

*Jackson v. Rohm and Haas Co.*,
    131 S. Ct. 206 (2010) ........................................................................................9, 13, 18

*Jackson v. Rohm and Haas Co.*,
    366 F. App'x 342 (3d Cir.),
    *cert denied, 131 S. Ct. 206 (2010)* ..................................................................9, 13, 18

*Jackson v. Rohm and Haas Co.*,
    No. 03-5299, 2005 WL 1592910 (E.D. Pa. June 30, 2005),
    *aff'd, Jackson v. Rohm and Haas Co.*, No. 06-1540,
    2007 WL 579662 (3d Cir. Feb. 26, 2007)....................................................................3

*Jett v. Beech Interplex, Inc.*,
    no. 02-9131, 2004 U.S. Dist. LEXIS 13352 (E.D. Pa. July 15, 2004) ......................16

*Keesling v. Beegle*,
    858 N.E.2d 980 (Ind. 2007), ......................................................................................19

*Kile v. Placer County Bd. of Sup'rd*,
    217 F.3d 845 (Table), 2000 WL 54422 (9th Cir. 2000) .............................................14

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993).............................................................................................10

*Lawlor v. National Screen Service Corp.*,
    349 U.S. 322 (1955)......................................................................................................12

*Linder v. Brown & Herrick*,
    943 P.2d 758 (Ariz. Ct. App. 1997)............................................................................20

*Longmont United Hosp. v St. Barnabas Corp.*,
    305 F. App'x 892 (3d Cir. 2009) ...........................................................18

*Lubrizol Corp. v. Exxon Corp.*,
    929 F.2d 960 (3d Cir. 1991)................................................................15

*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*,
    855 F. Supp. 673 (D. Del. 1994)..........................................................15

*McTernan v. City of York, Penn.*,
    577 F.3d 521 (3d Cir. 2009)................................................................11

*Patetta v. Wells Fargo Bank, NA*,
    no. 09-2848, 2010 U.S. Dist. LEXIS 47233 (D.N.J. May12, 2010)...........................11

*Post v. Mendel*,
    507 A.2d 351 (Pa. 1986) ...................................................................20

*Preiser v. Rosenzweig*,
    418 Pa. Super. 341 (Pa. Super. Ct. 1992) ..................................................20

*Raybestos Prods. Co. v. Younger*,
    54 F.3d 1234 (7th Cir. 1995) ..............................................................19

*Salley v. Rendell*,
    no. 08-132, 2008 U.S. Dist. LEXIS 30845 (W.D. Pa. Apr. 14, 2008).........................14

*San Remo Hotel, L.P. v. City and Cnty of San Francisco, Cal.*,
    545 U.S. 323 (2005)..................................................................... 11-12

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001)..................................................................... 13-14

*Shahin v. Darling*,
    606 F. Supp. 2d 525 (D. Del. 2009)...........................................12, 16, 17

*Testerman v. UAW*,
    288 F. Supp. 2d 633 (D. Del. 2003).......................................................12

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*,
    286 F. Supp. 2d 369 (D. DEL. 2003).................................................12, 16

*United States v. Athlone Indus., Inc.*,
    746 F.2d 977 (3d Cir. 1984)..........................................................16, 17

*Waris v. Mackey*,
 no. 09-1103, 2009 U.S. Dist. LEXIS 116961 (E.D. Pa. Dec. 14, 2009).....................15

## STATUTES

18 U.S.C. § 1964(c) ........................................................................................................18

## OTHER AUTHORITIES

Restatement (Second) of Torts, § 586................................................................................20

Restatement (Second) of Torts, § 586, cmt. d..................................................................20

## I.    NATURE AND STAGE OF THE PROCEEDINGS

In 2003, Mark Jackson filed a federal RICO lawsuit against his former employer, Rohm and Haas Company ("Rohm and Haas"), in the Eastern District of Pennsylvania.  He was unsuccessful in that action, but undeterred.  In 2005, within months of losing that case, he filed another RICO action in the Eastern District against Rohm and Haas and several of its attorneys. In the second RICO action, Mr. Jackson also sued Rohm and Haas' disability administrator, Liberty Life Assurance Company of Boston ("Liberty Life"), as well as two of Liberty Life's employees.  In 2006, before the second RICO action had concluded, Mr. Jackson filed yet another RICO action against Rohm and Haas and Liberty Life, as well as numerous individuals employed by or affiliated with those companies.  By March 19, 2009, all of Mr. Jackson's claims from his three federal RICO lawsuits had been dismissed with prejudice.  As of October 4, 2010, Mr. Jackson had exhausted all of his appeals.

Less than one month later, on November 2, 2010, Mr. Jackson filed yet another RICO complaint in this Court.  Although he has added new defendants, this is simply an attempt to relitigate the previous actions.

## II.    SUMMARY OF THE ARGUMENT

Mr. Jackson's complaint should be dismissed in its entirety based on the doctrines of *res judicata* and/or collateral estoppel.  In addition, to the extent that any claims survive a preclusion analysis, such claims against Liberty Mutual's attorneys – Richard Quinlan, Sean McSweeney and Michael Miller – should nevertheless be dismissed.

In each of the complaints filed in Mr. Jackson's previous lawsuits, he alleged an increasingly bizarre and ever-widening conspiracy against Rohm and Haas and its employees and attorneys, as well as Liberty Life and its employees.  While Mr. Jackson's prolix allegations often made it difficult to discern precisely what he was suing for, the previous lawsuits stemmed

- 1 -

from his belief that the defendants were interfering with his disability benefits and his employment.  The present complaint is merely a further iteration of previous allegations and claims, lodged against the same or similar defendants, that seek redress for the same harms.  Because Mr. Jackson has already had his day in court, the present action is barred in its entirety.

Moreover, to the extent any claims are not barred under preclusion principles, the Court should dismiss the claims against Liberty Mutual's attorneys for two reasons.  First, there is simply no way to construe Mr. Jackson's allegations to establish that these defendants caused Mr. Jackson any harm.  Indeed, Mr. Jackson accuses the attorneys of engaging in improper conduct in connection with Liberty Mutual's acquisition of Safeco Corporation in September 2008.  But, the only "injury to business or property" claimed by Mr. Jackson – the interference or cessation of disability benefits and the loss of his job – occurred well *before* the Safeco acquisition.  Second, each of these defendants was engaged in the representation of his client in a judicial or quasi-judicial proceeding.  Thus, these defendants are entitled to immunity.

## III.   FACTUAL BACKGROUND

To understand why Mr. Jackson's complaint should be dismissed, a brief review of the history of Mr. Jackson's previous lawsuits is necessary.

### A.   Mr. Jackson's Original State Court Action Against Rohm and Haas.

The antecedent to Mr. Jackson's federal lawsuits is an incident that occurred in 1998 while Mr. Jackson was employed by Rohm and Haas as an accountant.  Mr. Jackson went on a date with a co-worker who later accused him of sexual assault and then complained about him to Rohm and Haas.  Rohm and Haas subsequently questioned Mr. Jackson about these allegations, and Mr. Jackson sued Rohm and Hass in Pennsylvania state court for invasion of privacy and intentional infliction of emotional distress.  Although Mr. Jackson won a jury verdict, his case

- 2 -

was ultimately dismissed based on the exclusivity provision of Pennsylvania's worker's compensation act. *See Jackson v. Rohm and Haas Co.*, 56 Pa. D. & C.4th 449 (Pa. Com. Pl. 2002). This ruling was affirmed in the Pennsylvania Superior Court, and the Pennsylvania Supreme Court subsequently denied review. *See Jackson v. McCrory*, 833 A.2d 1155 (Pa. Super. 2003); *Jackson v. McCrory*, 578 Pa. 690 (2004).

### B.    Mr. Jackson's First Federal RICO Action (Jackson I).

On September 19, 2003, Mr. Jackson filed his first federal lawsuit ("Jackson I"), alleging, *inter alia*, various racketeering-based causes of action against Rohm and Haas, two law firms, and 17 individuals. Specifically, Mr. Jackson alleged that Rohm and Haas and its attorneys in the Pennsylvania state court lawsuit used altered documentary evidence and thereby perpetrated a fraud upon the court. *See* E.D. Pa. Civ. No. 03-5299, D.I. 1. The Eastern District dismissed Jackson I. The court found that, regardless of Mr. Jackson's views of the allegedly doctored evidence, Pennsylvania's worker's compensation statute barred his state court claims. Therefore, he was not harmed for RICO purposes and lacked standing. *Jackson v. Rohm and Haas Co.*, No. 03-5299, 2005 WL 1592910 (E.D. Pa. June 30, 2005), *aff'd*, *Jackson v. Rohm and Haas Co.*, No. 06-1540, 2007 WL 579662 (3d Cir. Feb. 26, 2007).

### C.    Mr. Jackson's Second Federal RICO Action (Jackson II).

On September 19, 2005, Mr. Jackson filed his second federal RICO lawsuit ("Jackson II"), which for the first time included claims against Liberty Life, then Rohm and Haas' claim administrator for Rohm and Haas' disability program. *See* E.D. Pa. Civ. No. 05-4988, D.I. 1. In Jackson II, Mr. Jackson again asserted claims against Rohm and Haas and several of its lawyers from Jackson I.

WM01/ 7857264.1

In *Jackson II*, Mr. Jackson alleged that he was disabled, that Liberty Life threatened to suspend his benefits and actually suspended his benefits, and that Liberty Life's actions were "strategically timed" to coincide with events in the state court action and Jackson I.  *See* E.D. Pa. Civ. No. 05-4988, D.I. 1 at ¶¶ 14, 20, 31.  Mr. Jackson claimed that Liberty Life's conduct constituted racketeering activity, witness intimidation in violation of 42 U.S.C. Section 1985, and gave rise to state claims for fraud, abuse of process, negligent misrepresentation, and intentional and negligent infliction of emotional distress.  *Id.*[1]  On September 13, 2007, the court in Jackson II dismissed all of Mr. Jackson's state-law claims.  E.D. Pa. Civ. No. 05-4988, D.I. 125 (attached hereto as Exhibit A).  That dismissal is final.

### D.    Mr. Jackson's Third Federal RICO Action (Jackson III).

On August 18, 2006, while *Jackson II* was pending, Mr. Jackson filed his third federal RICO lawsuit ("Jackson III").  *See* E.D. Pa. Civ. No. 06-3682, D.I. 1.  Again, much of the alleged conduct and almost all of the claims mirrored the Jackson II complaint.  In particular, Mr. Jackson contended that "defendants' actions in terminating his employment and discontinuing his disability benefits" violated RICO.  *See* E.D. Pa. Civ. No. 06-3682, D.I. 48, 49 (attached hereto as Exhibit B).  The claimed racketeering activity included obstruction of justice, mail and wire fraud, and conspiracy.  *Id.* at 8.  On September 6, 2007, all of the Jackson III claims against Liberty Life were dismissed, except for a lone ERISA claim.  *Id.*  With respect to the RICO claims, the court concluded that Mr. Jackson was unable to demonstrate a pattern of racketeering activity.  *Id.* at 11.  That dismissal is final.

---

[1] The defendants moved for sanctions, which were granted, as many of the claims adjudicated in Jackson I and reasserted in Jackson II were deemed frivolous.  *Jackson II*, No. 05-4988, 2006 WL 680933, at *1, 5-6 (E.D. Pa. Mar. 9, 2006) (finding Mr. Jackson's RICO claim based on his loss in the state court action "without warrant and frivolous" and his Section 1985 clam was also "frivolous").  The court also imposed a monetary sanction of $80,000 against Mr. Jackson's counsel.

### E.      The Consolidation of Jackson II and Jackson III.

#### i.      The Court Directs Mr. Jackson to File a Consolidated Complaint.

Following the dismissal orders in Jackson II and Jackson III, Mr. Jackson repeatedly

sought leave to amend his complaint to assert new claims based on additional conduct.  On May

20, 2008, Magistrate Judge M. Faith Angell consolidated Jackson II and III and explained that

the purpose of the conference was "to schedule the filing . . . of a proper complaint in this [now

consolidated] case."  *See* Transcript of May 20, 2008 Hearing, at 5, 11 (attached hereto as

Exhibit C) ("[I]f he believes in good faith he has claims, this is his forum, and this is his final

document and there will be no amendments.").  Judge Angell then issued an order requiring Mr.

Jackson to file a concise consolidated amended complaint to which there would be no "later

amendments."  *See* E.D. Pa. Civ. No. 06-3682, D.I. 93 at 1.

#### ii.      The Consolidated Complaint.

On June 11, 2008, Mr. Jackson filed a 152-page complaint that presented 25 claims, ten

of which were RICO claims.  *See* E.D. Pa. Civ. No. 05-4988, D.I. 168 (attached hereto as Exhibit

D and referred to herein as the "Consolidated Complaint" or "CAC").  Mr. Jackson also named

51 separate defendants.  *Id*.  A review of the allegations of conduct actually attributed to Liberty

Life (or its employees) in the Consolidated Complaint shows that its alleged activities are limited

to a few isolated events relating to the administration and termination of Mr. Jackson's disability

benefits.  *See* CAC, ¶¶ 32, 56, 91, 93, 96, 101(b), 104, 105, 115.  The vast majority of allegations

related to the so-called Warrick notes that Mr. Jackson believed were altered in the state court

litigation.  *Id*., ¶¶ 66, 67, 76-80, 88, 98, 114, 136, 179-226, 241-249, 251-253, 258-260.  Mr.

Jackson also alleged a series of bizarre incidents occurring between September 23, 2006 and

March 7, 2007.  *Id*., ¶¶ 142-164.  In particular, Mr. Jackson alleged a perceived threat stemming

from "flowers on the hood of his car," a "strange van sitting across from his house," and an incident with an SUV allegedly attempting to run him down, among other things. *See* CAC, ¶¶ 142, 144, 147, 149, 164.[2/3]

Because the Consolidated Complaint asserted numerous claims that already had been dismissed and otherwise failed to put Liberty Life and its defendant representatives on notice of their allegedly actionable conduct, Liberty Life moved to dismiss the Consolidated Complaint.

### iii.    Mr. Jackson Files Motion to Enjoin $6 Billion Acquisition of Safeco.

While the motion to dismiss the Consolidated Complaint was pending, Mr. Jackson filed a motion (and a 102-page memorandum) to enjoin a $6.2 billion transaction between Liberty Mutual Insurance Company ("Liberty Mutual") and Safeco – a transaction that did not involve any of the litigants and had no factual or legal relation to any of the Jackson cases. *See* E.D. Pa. Civ. No. 05-4988, D.I. 184.  At Mr. Jackson's request, Judge Angell held an expedited hearing on September 19, 2008, during which Mr. Jackson's counsel was unable or unwilling to explain how the proposed transaction affected Mr. Jackson and refused to address the merits of his motion. *See* Transcript of Sept. 19, 2008 Hearing (attached hereto as Exhibit F at 5-7).

On September 21, 2008, two days after Judge Angell denied Mr. Jackson's request for expedited relief, Mr. Jackson sought relief before the Office of the Insurance Commissioner in Washington State.  Mr. Jackson claimed Liberty Mutual, a non-litigant to the Jackson suits, should have reported the existence of the RICO lawsuits to the Washington Department of

---

[2] These allegations were specifically cited by the Eastern District as "without foundation" and "manifestly deficient for the purposes of stating a RICO obstruction of justice claim." (*See* E. D. Pa. Civ. No. 05-498, D.I. 230, at 9-10 (recommending the Consolidated Complaint be dismissed with prejudice), attached hereto as Exhibit E.)

[3] While plaintiff claims to have some basis to make this allegation against Rohm and Haas (*see* Compl., ¶ 29 n. 16), there could be no basis alleged to support these allegations against the Liberty Defendants.  As noted by Judge Angell, Mr. Jackson has failed to allege any "factual basis" to support his belief that these Defendants are connected to the alleged incidents at his home. *See* Exhibit E at 10.  Mr. Jackson again has failed to allege any facts that would support attributing responsibility for these actions to the Liberty Defendants.

Insurance in connection with its notice of the proposed acquisition.  On September 22, 2008, the

presiding regulatory official called an emergency telephone hearing.  During the telephone

hearing, each of the participants – including Mr. Jackson's counsel – was afforded the

opportunity to be heard.  At the conclusion of the telephone conference, the Office of the

Insurance Commissioner stated that it was "not going to take any further action in this matter,"

and that the previous order approving the Liberty Mutual-Safeco acquisition "stands as written."

*See* Transcript of Sept. 22, 2008 Telephone Hearing (attached hereto as Exhibit G at 70-71).

### iv.      The Dismissal of Consolidated Action.

On December 16, 2008, Judge Angell recommended that the Consolidated Complaint be

dismissed in its entirety.  *See* Exhibit E.  Judge Angell found that "Plaintiff's consistent failure to

file a proper complaint, despite repeated directives from the Court, can only be viewed as willful

or in bad faith."  *Id.* at 16.

While Judge Angell declined to address "each and every fact and claim," she did

"identify some glaring examples of improper claims/allegations."  Exhibit E, at 3.  For example,

Judge Angell found the allegations regarding the bizarre incidents at Mr. Jackson's home (*i.e.*,

the placement of flower petals, the loud banging on his door, and the SUV incident) to be

improper.  *Id*. at 9-10.  Judge Angell also examined the Consolidated Complaint under the six-

factor *Poulis* test[4], which included an assessment of whether Mr. Jackson's claims had merit.

Ultimately, Judge Angell concluded that only one factor did not "weigh heavily" in the

defendants' favor because "*some* of [Mr. Jackson's] claims *may* have merit and/or have survived

previous motions to dismiss."  *Id*. at 17 (emphasis added).  Nevertheless, the potential merit of

---

[4] The six-factor *Poulis* test was articulated by the Third Circuit in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984), and is a balancing test intended to determine whether dismissal should be granted for failure to obey a court order.

- 7 -

some of Mr. Jackson's claims was not enough, in Magistrate Judge Angell's view, to avoid a complete dismissal with prejudice. *Id.*

On March 19, 2009, Judge Pollak adopted most of Magistrate Judge Angell's report and recommendation. *See* E. D. Pa. Civ. No. 05-498, D.I. 247, 1-2 (stating "I will adopt the factual conclusions and virtually all the legal analysis of the Report and Recommendation" and agreeing with Judge Angell's "careful and thorough assessment of the Consolidated Amended Complaint"), attached hereto as Exhibit H.  The only portion of Magistrate Judge Angell's report that Judge Pollak did not follow was the recommendation that certain potentially meritorious claims should be dismissed:

> Accordingly, while I agree with Judge Angell's balancing of the *Poulis* factors as regards the [CAC] *in toto*, I have discretion to levy the *Poulis* sanction against all or just some of Jackson's claims.  In cautious exercise of that discretion, and in light of the conclusion (which Judge Angell and I share) that it is possible that certain of Jackson's claims may not be wholly meritless, I will dismiss most of the claims while allowing a small group to survive.

*Id.* at 3.  Ultimately, the only *potentially* meritorious claims that escaped dismissal were Mr. Jackson's four claims under the Americans With Disabilities Act (ADA), which were directed toward the Rohm and Haas defendants.  All of the claims against the Liberty Life defendants were dismissed with prejudice.  Significantly, Judge Pollak also noted that the RICO claims, which dominated all of Mr. Jackson's complaints, constituted "the worst pleading abuses in these consolidated cases." *Id*.

Mr. Jackson elected not to proceed with his ADA claims against Rohm and Haas so that he could immediately appeal the dismissal of his other federal claims to the Third Circuit.  While on appeal, the parties briefed the issues extensively, including the issues raised with the Washington Insurance Department regarding Liberty Mutual's disclosure of the Jackson

- 8 -

litigation.  The parties also briefed the application of Rule 72(a) of the Federal Rules of Civil

Procedure to requests for injunctive relief.  On April 5, 2010, the Third Circuit affirmed Judge

Pollak's decision (*see Jackson v. Rohm and Haas Co.*, 366 F. App'x 342 (3d Cir. 2010)), and on

October 4, 2010, the Supreme Court of the United States denied Mr. Jackson's petition for

certiorari (*see Jackson v. Rohm and Haas Co.*, 131 S. Ct. 206 (2010)).

**F.** **Mr. Jackson's Fourth RICO Action (the Delaware Lawsuit).**

Barely a month after the Supreme Court declined to review the Jackson litigation, Mr.

Jackson essentially refiled his Consolidated Complaint, and is now attempting to relitigate the

same baseless claims that have been repeatedly dismissed.[5]  As illustrated in the table below,

virtually all of the claims in the present action were included in the Consolidated Complaint.

| Del. Compl. | Consl. Compl. | Claim Asserted |
|---|---|---|
| Count I | Count X | RICO – Mail/wire fraud |
| Count II | Count I | RICO – Obstruction of Justice, § 1503 |
| Count III | Count II | RICO – Obstruction of Justice, § 1512(b)(1) |
| Count IV | Count III | RICO – Obstruction of Justice, § 1512(b)(2) |
| Count V | Count IV | RICO – Obstruction of Justice, § 1512(b)(3) |
| Count VI | Count V | RICO – Obstruction of Justice, § 1512(c) |
| Count VII | Count VII | RICO – Obstruction of Justice, § 1512(k) |
| Count VIII | Count VIII | RICO – Obstruction of Justice, § 1513(e) |
| Count IX | Count IX | RICO – Obstruction of Justice, § 1512(f) |
| Count X | Count XI | RICO – Obstruction of Justice, § 1562(d) |
| Count XIV | Count XI | Claim for abuse of process |
| Count XV | Count XX | Claim for fraud |
| Count XVII | Count XXIII | Claim for negligent misrepresentation |
| Count XVIII | Count XXIV | Claim for intentional infliction of emotional distress |
| Count XIX | Count XXV | Claim for negligent infliction of emotional distress |

In addition, as demonstrated by the table at Exhibit I, the allegations in the instant complaint are

---

[5] Mr. Jackson has admitted as much.  Prior to filing the present action, his former attorney wrote to Liberty Mutual's
counsel, stating that, despite the dismissal and admitting that he was prohibited from doing so in the Eastern District,
he intended to "re-file his claims, and do so in a more favorable forum."  *See* Exhibit J.

- 9 -

taken almost verbatim from the Consolidated Complaint.[6]

As with the Consolidated Complaint, a review of the allegations of conduct actually attributed to the Liberty Defendants shows that their alleged activities are limited to a few isolated events (including the writing of letters and placement of telephone calls) relating to the administration and termination of Mr. Jackson's disability benefits.  *See* Section E(ii), *supra*; *see also* Exhibit I.  Again, the vast majority of allegations relate to the so-called Warrick notes and the bizarre incidents at his home.  *Id.*

Mr. Jackson has also alleged three discrete acts that were not included in the Consolidated Complaint.  Mr. Jackson claims Liberty Mutual failed to disclose the Jackson litigation to regulators prior to Liberty Mutual's merger with Safeco, that counsel for Liberty Mutual deemed the Jackson litigation as not material in response to certain regulatory inquiries, and that Liberty Mutual's counsel erroneously characterized Judge Angell's authority during the telephone conference with the Washington Insurance Department on September 21, 2008.  Compl. ¶¶ 207-217.  While these acts were not included in the Consolidated Complaint, they were raised, or could have been raised before the Eastern District, the Third Circuit and the United States Supreme Court.  *See* Briefing filed by Mr. Jackson in Third Circuit, attached as Exhibit K; Supreme Court denial of certiorari, attached as Exhibit L.  *See* also, Exhibits F, G, O.

## IV.   **ARGUMENT**

### A.   **Legal Standards.**

This is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  "When there are well-pleaded factual allegations, a court should assume their veracity and then

---

[6] While plaintiff has substituted Liberty Mutual in Liberty Life's place as a defendant, Mr. Jackson refers to both companies interchangeably, *see* Compl. ¶ 5, and seeks to hold Liberty Mutual responsible for all of the same conduct that Mr. Jackson alleged in support of the claims previously dismissed in the Eastern District.

determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993), *see also Fisher Bros. Sales v. United States*, 46 F.3d 279, 286 (3d Cir.), *cert. denied*, 516 U.S. 806 (1995) (noting that the court is not bound to accept the plaintiff's characterization of those facts). Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

A motion to dismiss based on *res judicata* and collateral estoppel grounds may be granted when "the predicate establishing the [preclusion] defense is apparent *from the face of the complaint*." *See Patetta v. Wells Fargo Bank, N.A.*, no. 09-2848, 2010 U.S. Dist. LEXIS 47233, at *20 (D.N.J. May12, 2010) (quoting *Brody v. Hankin*, 145 Fed. App'x 768, 771 (3d Cir. 2005). Further, in deciding such motions, a court may consider those documents referenced in the complaint or the judicial opinion of another court. *Id.* at *20-21 (quotations and citations omitted); *see also McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009) ("[T]he court can review documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion.") (internal citation omitted).

**B.      Plaintiff's Claims are Barred by the Doctrine of *Res Judicata* and/or Collateral Estoppel.**

Because of the Eastern District's previous dismissals, the claims asserted against the Liberty Defendants here are barred by the doctrine of *res judicata* (and/or collateral estoppel). "Under res judicata*,* a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *San Remo Hotel, L.P. v. City and Cnty of San Francisco, Cal.,* 545 U.S. 323, 336 n.16 (2005) (quoting *Allen v. McCurry,* 449 U.S. 90, 94-96 (1980)). "The rationale [behind the doctrine of *res*

*judicata*] is that if the adjudication of an action is binding on parties in privity with the parties

formally named in the litigation, then any claims against parties in privity should be brought in

the same action lest the door be kept open for subsequent relitigation of the same claims."

*Shahin v. Darling*, 606 F. Supp. 2d 525, 545 (D. Del. 2009) (citing *Transamerica Occidental Life*

*Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 392 (3d Cir. 2002)).[7]

    The doctrine of *res judicata* will act as a bar to claims if the defendant can demonstrate:

(1) a final judgment in a court of competent jurisdiction; (2) the presence of the same parties or

their privies; and (3) a subsequent suit based on the same cause of action as in the previous case.

*Household Int'l, Inc. v. Westchester Fire Ins. Co.,* 286 F. Supp. 2d 369, 374 (D. Del. 2003).  All

three requirements are present here.

      **i.**      **The Eastern District's Dismissal of Plaintiff's Claims is a Final**
                  **Judgment on the Merits.**

    The Eastern District's dismissal orders in Jackson II, Jackson III, and the dismissal of the

Consolidated Complaint with prejudice satisfies the first prong for applying *res judicata*.  *See*

*Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972) ("Dismissal with prejudice constitutes

an adjudication of the merits as fully and completely as if the order had been entered after trial")

(citing *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327 (1955)); *Testerman v. UAW*,

288 F. Supp. 2d 633, 637 (D. Del. 2003) (same).  There is no question that Mr. Jackson had a full

opportunity to appeal and, in fact, did appeal each of the dismissal orders in the previous

litigation.  *See Jackson v. Rohm and Haas Co.*, 366 F. App'x 342 (3d Cir. 2010); *see also*

*Jackson v. Rohm and Haas Co.*, 131 S. Ct. 206 (2010).  The Third Circuit affirmed the Eastern

---

[7] As set forth below, even if the doctrine of *res judicata* did not bar Mr. Jackson from asserting these claims, he is nonetheless barred from doing so under the doctrine of collateral estoppel or issue preclusion.  *See Shahin*, 606 F. Supp. 2d at 545 ("Issue preclusion occurs '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'").

Districts orders, and the Supreme Court denied review.  Accordingly, the previous orders are final.

While Mr. Jackson cannot seriously contend that the previous orders are not final, he has suggested elsewhere that the dismissal of the Consolidated Complaint was not "on the merits." Moreover, while Mr. Jackson has repeatedly characterized the dismissal of the Consolidated Complaint as a mere "pleading violation," he is incorrect.[8]  Reading Judge Angell's report and recommendation together with Judge Pollak's dismissal order reveals that the dismissal was merits-based.

Judge Angell concluded that some of Mr. Jackson's claims had potential merit, but that all of the other *Poulis* factors weighed so heavily against him that any potential merit should not save the Consolidated Complaint from complete dismissal.  *See* Exhibit E.  Judge Angell did not delineate the potentially meritorious claims from those lacking merit.  Judge Pollak disagreed with Judge Angell only in her conclusion that potentially meritorious claims should be dismissed as a sanction.  Judge Pollak then undertook a careful, substantive analysis of the twenty five claims in the Consolidated Complaint.  After doing so, Judge Pollak permitted four claims to survive – none of which involved Liberty Life or its employees.  *See* Exhibit H.  Indeed, the Court noted that the RICO claims that have dominated all of Mr. Jackson's lawsuits, including this one, were "the worst pleading abuses" of the consolidated actions.  *Id.*

As he has done in various pleadings, Mr. Jackson will no doubt rely on *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497 (2001). *Semtek*, however, has no relevance here because it involved a dismissal based on statute-of-limitations grounds rather than the merits of the claims.

---

[8] He can make no such claim with respect to the dismissal of the state law claims in Jackson II and the dismissal of the RICO claims in Jackson III.  *See* Exhibits A and B.

- 13 -

*Id.* at 499. [9]  Like the dismissal of the Consolidated Complaint, a dismissal granted as a sanction

for failure to obey court orders (*i.e.*, under *Poulis*) constitutes a "'final judgment on the merits'

for the purposes of the federal law of res judicata." *See, e.g., Salley v. Rendell*, no. 08-132, 2008

U.S. Dist. LEXIS 30845 (W.D. Pa. Apr. 14, 2008) (finding that the dismissal with prejudice of

the plaintiff's first action, entered because plaintiff repeatedly failed to comply with the court's

order that he file a complaint that satisfied the Federal Rules of Civil Procedure was a final

judgment on the merits for the purposes of *res judicata*.) (citing *Kile v. Placer Cnty Bd. of

Supervisors*, 217 F.3d 845 (Table), 2000 WL 554422, at *1 (9th Cir. 2000) ("The earlier action

was dismissed as a discovery sanction, and such dismissal is a termination on the merits.")).

Thus, any reliance on *Semtek* by Mr. Jackson in an effort to defeat the effects of *res judicata* is

misplaced.

      **ii.**     **The Same Parties are Involved in the Instant Action as in the Previous
Litigation.**

     The second prong of the test for determining the application of *res judicata* is also met

here.  Defendants Lori Hamlin and Nancy Mayo were both named as defendants in the CAC.

Here, Mr. Jackson has substituted Liberty Mutual as a defendant in place of Liberty Life (while

arguing the entities should be treated as one in the same), and he has also added Richard Quinlan

and Sean McSweeney (two in-house attorneys for Liberty Mutual), and Michael Miller (an

outside attorney who defended Liberty Life in the previous lawsuits).  The addition of Messrs

---

[9] In *Semtek*, the plaintiff filed claims in California federal court, but those claims were dismissed with prejudice
because they were time-barred under California's statute of limitations.  The Court entered a dismissal order under
Rule 41(b), which, by its terms, "operates as an adjudication upon the merits" unless otherwise specified.  The
plaintiff later refiled his claims in Maryland, but they were dismissed based on *res judicata*.  The Supreme Court
examined whether a dismissal that did not *actually* involve a merits-based assessment could preclude a future
lawsuit under the doctrines of *res judicata* or collateral estoppel.  The Court concluded that a dismissal with
prejudice that did not involve a merits-based assessment of the claims will not necessarily be subject to the doctrines
of *res judicata* and collateral estoppel.  *Id.* at 508.  The Supreme Court, therefore, held that the plaintiff was not
precluded from refiling his claims in Maryland, because the California federal court's statute of limitations dismissal
had not adjudicated the merits of the plaintiff's claims.  *Id.* at 509.

Quinlan, McSweeney and Miller does not alter the conclusion that the parties are the same in the two lawsuits for the purpose of the application of *res judicata*.

"[C]ourts have . . . enlarged the area of res judicata beyond any definable categories of privity between the defendants." *Bruszewski v. United States,* 181 F.2d 419, 422 (3d Cir. 1950). *Res judicata* applies "where there is a *close or significant* relationship between successive defendants." *Gambocz,* 468 F.2d at 841 (emphasis added); *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha,* 855 F. Supp. 673, 677 (D. Del. 1994) (finding a sufficiently close relationship between parent company and a wholly-owned subsidiary to bar subsequent claims against parent company from claims already litigated against subsidiary); *see also Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 966 (3d Cir. 1991).

Each of the individual defendants not previously named is in privity with Liberty Life for *res judicata* purposes. Mr. McSweeney and Mr. Quinlan were employees of Liberty Mutual. *See Waris v. Mackey,* no. 09-1103, 2009 U.S. Dist. LEXIS 116961, *22 (E.D. Pa. Dec. 14, 2009) ("With businesses, their employees and attorneys are in privity with the business."); *see also Benjamin v. Tomasso,* no. 98-2659, 1998 U.S. Dist. LEXIS 18647, * 7 (E.D. Pa. Nov. 24, 1998) (employees sued in their official capacities are considered in privity with their employer for *res judicata* purposes); *Foster v. N.J. DOT,* no. 04-101, 2005 U.S. Dist. LEXIS 36439, at *11 n.4 (D.N.J. Dec. 27, 2005) (same). Mr. Miller was Liberty Life's outside counsel. As such, he also is in privity with Liberty Life. *See Iseley v. Talaber,* no. 05-444, 2008 U.S. Dist. LEXIS 25700, at *7 n.1 (E.D. Pa. Mar. 31, 2008) (finding that defendant in the present action, though not named in the prior action, was in privity with the defendant in the prior action because "he served as counsel in the action and . . . shared the same legal interests in the outcome of that case."); *Jett v. Beech Interplex, Inc.,* no. 02-9131, 2004 U.S. Dist. LEXIS 13352, at *14-15 (E.D.

- 15 -

Pa. July 15, 2004) (attorney acted as an "agent" for client based upon the representation in prior

lawsuit and therefore was in privity with the client for *res judicata* purposes).

This lack of separateness between the defendants establishes the privity necessary for

claim preclusion. *Shahin*, 606 F. Supp. 2d at 545 ("The rationale is that if the adjudication of an

action is binding on parties in privity with the parties formally named in the litigation, then any

claims against parties in privity should be brought in the same action lest the door be kept open

for subsequent relitigation of the same claims.") (quoting *Transamerica Occidental Life Ins. Co.*,

292 F.3d at 392).[10]

> ### iii.   The Causes of Action Asserted Here are the Same Causes of Action as in the Previous Litigation.

The third prong of *res judicata* is also satisfied here.[11]   "In deciding whether two suits are

based on the same 'cause of action,' [the Third Circuit] take[s] a broad view, looking to whether

there is an 'essential similarity of the underlying events giving rise to the various legal claims.'"

*CoreStates Bank, N.A. v. Huls Am., Inc.,* 176 F.3d 187, 194 (3d Cir. 1999) (quoting *United*

*States v. Athlone Indus., Inc.,* 746 F.2d 977, 984 (3d Cir. 1984)).   As noted by the Third Circuit:

A single cause of action may comprise claims under a number of different statutory and

common law grounds. . . . *Rather than resting on the specific legal theory invoked, res judicata*

*generally is thought to turn on the essential similarity of the underlying events giving rise to the*

*various legal claims*, although a clear definition of that requisite similarity has proven elusive. . .

---

[10] Moreover, even if the second prong of *res judicata* were not met with respect to the individual defendants, Mr. Jackson's RICO claims would be barred by collateral estoppel, which, as discussed above, does not require privity between successive defendants.  *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 328-29 (1971) (observing that issue preclusion does not require privity between both sets of parties).

[11] The court need look no further that Mr. Jackson's filings for his agreement with this point.  *See* E.D. Pa. 05-4988, D.I. 261at 7 (wherein Mr. Jackson admits that in this action he has simply "updated and re-filed the fraud and racketeering case previously filed in [Jackson II]."), attached as Exhibit M; 7th Cir. No. 10-2175, D.I. 27 at 3 (wherein Mr. Jackson admits that he "re-filed the fraud and racketeering case previously filed in [Jackson II]" when he filed this complaint), attached as Exhibit N.  *See also* E.D. Pa. 05-4988, D.I. 262.

*Athlone Indus., Inc.*, 746 F.2d at 983-84 (emphasis supplied) (quoting *Davis v. United States Steel Supply, Div. of United States Steel Corp.*, 688 F.2d 166, 171 (3d Cir. 1982)).

There can be no doubt there is an "essential similarity of the underlying events giving rise to the various legal claims" in this action as compared to the previous lawsuits.  Mr. Jackson not only attaches the same labels to his claims as he did in the Consolidated Complaint, he reiterates his allegations from the Consolidated Complaint – including allegations that were previously determined to be frivolous[12] – and asserts the same claims that were the subject-matter of the previously dismissed Consolidated Complaint.[13]  Moreover, there are dozens of other paragraphs that mirror those of the Consolidated Complaint with only minor, non-substantive, changes.  *See, e.g.*, Exhibit I.  Accordingly, because the "essential allegations of the second complaint parallel those of the first," the doctrine of *res judicata* is appropriately applied here.  *See Gambocz*, 468 F.2d at 842.[14]

Mr. Jackson's inclusion of a few additional allegations relating to the Safeco acquisition does not change this analysis.  First, each of these allegations was raised, briefed, and adjudicated in the denial of plaintiffs motion to enjoin the Safeco merger[15] and in the briefing of

---

[12] *See* Exhibit E, 4-6 ("Each time Plaintiff has attempted to resurrect the Warrick note allegations in *Jackson II and III*, Judge Pollack has rejected these claims as frivolous.").  As he did in his previous complaints, including the Consolidated Complaint, plaintiff again reasserts his frivolous allegations regarding the Warrick notes in support of his RICO – obstruction of justice claims.

[13] As set forth in the table in Section E(i) of the Statement of Facts, *supra*, all of Mr. Jackson's purported federal RICO claims and various state law claims asserted against the Liberty Defendants are indeed *same* RICO and common law claims the Eastern District has previously dismissed, the last time with prejudice.  *See also* Exhibit I (comparing the complaint in this matter to the Consolidated Complaint).

[14] Even if the doctrine of *res judicata* does not compel the entry of dismissal with respect to the claims asserted against the Liberty Defendants, the Liberty Defendants would nevertheless be entitled to have the claims asserted against them dismissed under the doctrine of collateral estoppel (issue preclusion).  *See Shahin*, 606 F. Supp. 2d at 545.  *See* Exhibits A, B, E & H.  Thus, the doctrine of collateral estoppel prevents Mr. Jackson from litigating those claims again.

[15] *See* E.D. Pa. Civ. No. 05-4988, D.I. 251 (denying Plaintiff's motion for an injunction of the Liberty-Safeco merger) (attached hereto as Exhibit O).

- 17 -

plaintiff's unsuccessful appeal to the Third Circuit and the United States Supreme Court.  *See Jackson v. Rohm and Haas Co.*, 366 F. App'x 342, *cert denied*, 131 S. Ct. 206.

### C.     Mr. Jackson's Claims Against Attorney Defendants Fail as a Matter of Law.

While all of Mr. Jackson's claims are barred by *res judicata* and/or collateral estoppel, should any of those claims survive dismissal, the Court should nevertheless dismiss from this lawsuit Defendants Quinlan, McSweeney and Miller.  Their conduct relates solely to the defense of Liberty Life in the previous lawsuit and/or the Safeco acquisition.  Their alleged conduct did not in any way impact Mr. Jackson's benefits or employment or otherwise harm him.  In addition, these defendants are entitled to judicial immunity.

### i.     The Attorney Defendants' Actions Did Not Harm Mr. Jackson.

Under 18 U.S.C. § 1964(c), a person "injured in his business or property by reason of a violation of section 1962" may bring a civil cause of action.  However, the "by reason of" language imposes a proximate cause requirement on the plaintiff.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992) (holding that a RICO plaintiff is allowed to sue for damages only if the alleged RICO violation was the proximate cause of plaintiff's injury.); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."); *Longmont United Hosp. v. St. Barnabas Corp.*, 305 F. App'x 892, 894 (3d Cir. 2009) (same).

Mr. Jackson cannot establish a proximate cause relationship between his claimed harm and the attorney defendants' conduct.  Mr. Jackson's claimed injury to business or property is the interference with or cessation of his disability payments and the termination of his employment.  Compl. ¶ 255-261.  To the extent that this constitutes harm, it had already occurred long before the attorney defendants' alleged conduct.  Indeed, Jackson II (filed in September 2005) and

- 18 -

Jackson III (filed in August 2006) were premised on these alleged harms.  The attorney

defendants' actions in 2008 could not proximately cause injuries that allegedly occurred no later

than 2006.  Therefore, even if the attorney defendants' conduct constituted violations of section

1962, such conduct is not actionable under section 1964(c).

Mr. Jackson has not alleged any other cognizable claim of injury to business or property.

His vague allegations that the attorney defendants interfered with the litigation are not sufficient.

As discussed at length above, Mr. Jackson lost the previous litigation because his claims were

utterly without merit – not because of any improper conduct on the part of Liberty Mutual's

inside or outside counsel.[16]

### ii.  Counsel for the Liberty Defendants are Entitled to Litigation Immunity.

Even if Mr. Jackson is deemed to have stated claims concerning alleged litigation

misconduct, the attorney defendants are entitled to the protection of litigation immunity for any

conduct occurring in judicial or quasi-judicial proceedings.  It is well-established that a claim

made by an adverse party against an attorney based upon the attorney's litigation conduct will

fail.  *See, e.g., Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986) (privilege designed to protect the

adversary system itself by barring claims that would disrupt the litigation); *Linder v. Brown &

Herrick*, 943 P.2d 758, 766 (Ariz. Ct. App. 1997) (dismissing claims of fraud and intentional

---

[16] Any other claims directed toward the attorney defendants similarly fail for lack of proximate causation.  This includes Mr. Jackson's purported Indiana RICO claim.  *See Keesling v. Beegle*, 858 N.E.2d 980, 992 (Ind. Ct. App. 2006), *transfer granted, vacated*, 869 N.E.2d 455 ("To establish that a defendant's racketeering activities damaged or injured a civil plaintiff, the plaintiff must demonstrate that the defendant's actions 'proximately caused' the injury.  'Proximate cause' exists when there is 'some direct relation between the injury asserted and the injurious conduct alleged.'  How 'direct,' of course, cannot be reduced to a single, uniformly applicable equation.  Instead, notions of justice and policy often dictate the boundaries of 'proximate causation.') (quoting *Raybestos Prods. Co. v. Younger*, 54 F.3d 1234, 1243 (7th Cir. 1995) (citing *Holmes, supra*)).

infliction of emotional distress against opposing counsel for failure to state a claim); *see also* Restatement (Second) of Torts, § 586.

The litigation privilege extends to court, court-related, or quasi-judicial proceedings. *See Preiser v. Rosenzweig*, 418 Pa. Super. 341, 348 (Pa. Super. Ct. 1992).[17]  In *Preiser*, the Pennsylvania Superior Court recognized the applicability of the litigation privilege to formal judicial proceedings and noted that the litigation privilege would apply in proceedings before "judicial officers, a judge and a court-appointed special master." *Id.*; *see also* Restatement (Second) of Torts, § 586, cmt. D.  Without the litigation privilege, virtually any attorney who successfully represents or advocates for a client would be subject to a future lawsuit by the losing party, and there would be no end to litigation.  The alleged conduct of the attorney defendants here falls squarely within the scope of the litigation privilege, and all claims against them should be dismissed.

## V.    CONCLUSION

For the reasons set forth above, Mr. Jackson's complaint should be dismissed with prejudice.

Dated:  January 28, 2011                  DRINKER BIDDLE & REATH LLP
*Of Counsel*                              */s/ Todd C. Schiltz*
Jason P. Gosselin (admitted *pro hac vice*)    Todd C. Schiltz (Id. No. 3253)
Drinker Biddle & Reath LLP           1100 N. Market Street
One Logan Square, Ste. 2000          Suite 1000
Philadelphia, PA  19103-6996         Wilmington, DE  19801-1254
                                     (302) 467-4200
*Attorneys for Defendants Liberty Mutual Insurance Company, Lori Hamlin, Nancy Mayo, Richard P. Quinlan, Sean B. McSweeney and Michael Miller*

---

[17] Aside from preserving the ability of parties to speak freely in support of their causes, the litigation privilege is also intended to preserve freedom of access to the courts by insuring that parties are not deprived of the benefit of legal representation by the specter of tort liability against their attorneys. *See Huhta v. State Bd. of Med.*, 706 A.2d 1275, 1276 (Pa. Commw. Ct. 1998) (citing *Post v. Mendel*, 507 A.2d 351 (Pa. 1986)).

WM01/ 7857264.1

## CERTIFICATE OF SERVICE

I, Todd Schiltz, hereby certify that on January 28, 2011, I electronically filed a copy of the foregoing Memorandum of Law in Support of Motion of Defendants Liberty Mutual Insurance Company, Lori Hamlin, Nancy Mayo, Sean B. McSweeney, Richard P. Quinlan, and Michael Miller to Dismiss Plaintiff's Complaint using the CM/ECF system, which will send notification of such filings to CM/ECF participants, including all counsel representing the parties involved herein.

I also hereby certify that I caused a true and correct copy of the foregoing Memorandum of Law in Support of Motion of Defendants Liberty Mutual Insurance Company, Lori Hamlin, Nancy Mayo, Sean B. McSweeney, Richard P. Quinlan, and Michael Miller to Dismiss Plaintiff's Complaint to be served via email and First Class Mail on the below:

> Mark Jackson
> 104 W. Shunk Street
> Box 16A
> Philadelphia, PA 19148

> */s/ Todd C. Schiltz*
> Todd C. Schiltz (Id. No. 3253)